UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY E. ROBERTS, SR.,

        Plaintiff,

   v.

JESSE HERNANDEZ,

        Defendant.

No.  2:11-cv-03308 DAD P[1]

ORDER

Plaintiff Anthony E. Roberts is a state prisoner incarcerated at Valley State Prison in Chowchilla, California.  Plaintiff is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983, in which he asserts First and Eighth Amendment claims against the sole defendant in this action, Jesse Hernandez, based on conduct that allegedly occurred during plaintiff's incarceration at Mule Creek State Prison (MCSP).  Specifically, plaintiff alleges that defendant Hernandez, a supervising cook at MCSP, sexually harassed plaintiff and then retaliated against him when plaintiff filed an administrative grievance.

Currently pending before the court is defendant's motion for summary judgment brought pursuant to Rule 56, Federal Rules of Civil Procedure.  For the reasons set forth below, the undersigned grants defendant Hernandez's motion for summary judgment.

---

[1]  The parties have previously consented to magistrate judge jurisdiction 0ver this action for all purposes under 28 U.S.C. § 636(c) and Local Rule 305(a).  (See ECF Nos. 11, 21.)

**BACKGROUND**

This action proceeds on plaintiff's original complaint, filed July 28, 2011.  (ECF No. 1.)

Therein, plaintiff alleges in full:

> On 1-2-11, C.S.C. (Freestaff Cook) Hernandez tried engaging me into sexual playful chatter, by saying "Jamaicans has small penis," while tapping me on the shoulder, then asking, "Are you gay?"  I declined to answer and told Mr. Hernandez (as in the past) not to play with me nor harass me as he has done unto others in the past.  I also informed Hernandez that I will not allow him to grope my penis as he's done a fellow prisoner, so Hernandez refused to let me work on 1/3/11 and 1/5/11.[2]

(ECF No. 1 at 3.)  Plaintiff seeks "an injunction from being retaliated upon, via harassment,"

transfer to another prison, the removal of allegedly false disciplinary chronos from his central file,

and monetary damages to compensate him for his allegedly resulting mental anguish.  (ECF No. 1

at 3-4.)  However, plaintiff was transferred from MCSP to Valley State Prison on February 4,

2013 (see ECF No. 19), rendering moot his claim for injunctive relief and request for an

institutional transfer.

On November 15, 2013, counsel for defendant Hernandez filed the pending motion for

summary judgment.   (ECF No. 29.)  After obtaining extensions of time, and by application of the

mailbox rule,[3] plaintiff timely filed his opposition on March 3, 2014.  (ECF No. 37; see also ECF

Nos. 34, 36.)  On March 12, 2014, defendant filed his reply.  (ECF No. 38.)  Thereafter, plaintiff

/////

/////

/////

---

[2] In his March 2013 opposition to the pending motion, plaintiff identifies the days that defendant Hernandez refused to let him work as January 5 and 9, 2011 (ECF No. 37 at 2) (as asserted by defendant); however, at his June 2013 deposition, plaintiff again identified the pertinent dates as January 3 and 5, stating "I don't know what happened" January 9, 2011.  (Roberts Dep. 84:6-7.)

[3] Plaintiff signed his opposition on February 26, 2014.  (See ECF No. 37 at 2.)  The "mailbox rule" established in Houston v. Lack, 487 U.S. 266, 276 (1988), applies to § 1983 suits filed by pro se prisoners.  The rule renders the "filing date" of a court document as the date the plaintiff signed and delivered the document to prison authorities for mailing.  See Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009).

1

2   filed a "response" (ECF No. 39), properly characterized as an unauthorized surreply.[4]

3   **LEGAL STANDARDS**

4   **I.  Summary Judgment Standards Under Rule 56**

5          Summary judgment is appropriate when the moving party "shows that there is no genuine

6   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

7   Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

8   proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

9   627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

10  The moving party may accomplish this by "citing to particular parts of materials in the record,

11  including depositions, documents, electronically store information, affidavits or declarations,

12  stipulations (including those made for purposes of the motion only), admission, interrogatory

13  answers, or other materials" or by showing that such materials "do not establish the absence or

14  presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

15  support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden

16  of proof at trial, "the moving party need only prove that there is an absence of evidence to support

17  the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325).

18  See also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after

19  adequate time for discovery and upon motion, against a party who fails to make a showing

20  sufficient to establish the existence of an element essential to that party's case, and on which that

21  party will bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure

22  of proof concerning an essential element of the nonmoving party's case necessarily renders all

23  other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so

24  long as whatever is before the district court demonstrates that the standard for entry of summary

25  judgment, . . ., is satisfied."  Id. at 323.

26  ---

[4] A surreply is not authorized by the Federal Rules of Civil Procedure or the Local Rules of this
27  court.  See Local Rule 230 (authorizing only a motion, an opposition or statement of non-
opposition, and a reply).  Nonetheless, in light of plaintiff's pro se status the court has considered
28  the arguments set forth in that unauthorized pleading.

1   If the moving party meets its initial responsibility, the burden then shifts to the opposing

2   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

3   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

4   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

5   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

6   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

7   Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

8   fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

9   governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

10  Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

11  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

12  party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

13  In the endeavor to establish the existence of a factual dispute, the opposing party need not

14  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

15  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

16  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

17  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

18  Matsushita, 475 U.S. at 587 (citations omitted).

19  "In evaluating the evidence to determine whether there is a genuine issue of fact," the

20  court draws "all reasonable inferences supported by the evidence in favor of the non-moving

21  party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

22  the opposing party's obligation to produce a factual predicate from which the inference may be

23  drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

24  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

25  party "must do more than simply show that there is some metaphysical doubt as to the material

26  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

27  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

28  omitted).

1  **II.  Civil Rights Act Pursuant to 42 U.S.C. § 1983**

2         The Civil Rights Act under which this action was filed provides as follows:

3                 Every person who, under color of [state law] . . . subjects, or causes
                  to be subjected, any citizen of the United States . . . to the
4                 deprivation of any rights, privileges, or immunities secured by the
                  Constitution . . . shall be liable to the party injured in an action at
5                 law, suit in equity, or other proper proceeding for redress.

6  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

7  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

8  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

9  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

10  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

11  omits to perform an act which he is legally required to do that causes the deprivation of which

12  complaint is made."[5]  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

13                     **PARTIES' EVIDENCE AND ARGUMENTS**

14         Defendant moves for summary judgment on the grounds that:  (1) plaintiff has failed to

15  present sufficient evidence in support of his claims to survive summary judgment; (2) even under

16  plaintiff's version of the facts, he fails to state actionable claims; and (3) alternatively, under the

17  undisputed facts of the case, defendant is entitled to qualified immunity.  (Def.'s Mem. of Ps &

18  As in Supp. of MSJ (ECF No. 29-1).)

19  **I.  Defendant's Evidence and Arguments**

20         In moving for summary judgment in his favor, defendant Hernandez has submitted a

21  Statement of Undisputed Facts supported by his declaration signed under penalty of perjury and

22  by the declaration of his counsel, Deputy Attorney General Diana Esquivel, as well as the exhibits

23

24  _____

25  [5] Supervisory personnel are generally not liable under § 1983 for the actions of their employees
    under a theory of respondeat superior and, therefore, when a named defendant holds a
26  supervisorial position, the causal link between him and the claimed constitutional violation must
    be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v.
27  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the
    involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of
28  Regents, 673 F.2d 266, 268 (9th Cir. 1982).

                                                     5

1   attached thereto.  Defendant's Statement is also supported by citations to the transcript of

2   plaintiff's deposition.  The evidence and arguments submitted by defendant establish the

3   following.[6]

4          Plaintiff was incarcerated at MCSP from July 2005 to February 2013.  (Roberts Dep.

5   43:9-16 (Lodged Doc., ECF No. 31) (see also Esquivel Decl., Ex. E).)  In January 2011, plaintiff

6   worked as a linebacker in the Facility C satellite kitchen, for which he was compensated.  As a

7   linebacker, his duties included setting up and replenishing the serving line and putting out the

8   bread.  However, it was not uncommon for workers to perform various tasks outside their

9   assigned positions depending on the needs of the kitchen.  (Hernandez Decl. ¶¶ 3, 8; Roberts Dep.

10  43:9-16, 51:24-52:2, 52:20-28, 56:19-22, 62:2-18; Pl.'s Inmate Work Supervisor's Time Log

11  (Work Log) (Esquivel Decl., Ex. A, ECF No. 29-4 at 4).)

12         In January 2011, defendant Hernandez was a Supervising Cook at MCSP.  Although

13  assigned to the main kitchen, he occasionally worked in the satellite kitchens, where he

14  supervised the inmate workers who prepared and served the meals on each yard.  (Hernandez

15  Decl. ¶¶ 1-2.)

16         Inmate workers in the Facility C satellite kitchen reported to work around 12:00 p.m. to

17  begin setting up for the evening meal.  The satellite kitchens started serving the evening meal

18  around 4:00 or 4:30 p.m., and dinner ended around 6:00 p.m.  (Hernandez Decl. ¶¶ 3-4; Roberts

19  Dep. 65:15-19.)  In January 2011, the Facility C satellite kitchen prepared over 1,000 meals a day.

20  Due to the large number of inmates, and need to systematically release and feed inmates from the

21  various housing units, it was important to maintain an efficient system for serving the meals.  The

22  quantity of food prepared in the main and satellite kitchens was based on the number of inmates

23  housed on each yard.  Although a certain amount of food was prepared above the needed quantity

24  to account for mishaps or other unexpected circumstances, satellite-kitchen workers had to serve

25  specific portions to avoid a shortfall.  (Hernandez Decl. ¶¶ 5-7.)

26  ────────────────
[6]  Plaintiff broadly states that he "is in agreement" with defendant's Statement of Undisputed
27  Facts.  (See ECF No. 37 at 5.)  However, review of defendant's Statement (ECF No. 29-2)
    indicates that it includes many facts that are disputed by plaintiff.  Accordingly, above the court
28  recounts each party's arguments and evidence.

On January 2, 2011, plaintiff reported to work as a linebacker at the Facility C satellite kitchen around 11:45 a.m.; however, he was required to start work as a server.  Plaintiff was responsible for serving the main entrée, which was spaghetti sauce, on the trays.  Around 4:00 p.m., the Facility C kitchen started feeding the gym inmates.  Defendant noticed that plaintiff was placing heaping scoops of spaghetti sauce on the trays that exceeded the allotted portions, despite being instructed to provide level servings.  (Hernandez Decl. ¶ 9; Roberts Dep. 56:27-57:4, 62:24-63:1.)  Defendant Hernandez twice informed plaintiff that he was serving too much spaghetti sauce and that plaintiff needed to adhere to the specified portion.  After the third warning, Hernandez removed plaintiff from the serving line.  Plaintiff was upset and started complaining about the staff and other workers.  Plaintiff's comments were disrupting and slowing down the service line.  Defendant Hernandez told plaintiff to leave the kitchen and had the correctional officer assigned to the kitchen remove plaintiff from the area.  (Hernandez Decl. ¶¶ 10, 11; Roberts Dep. 73:25-74:13.)  Plaintiff was escorted out of the kitchen around 4:30 p.m. on January 2, 2011.  Defendant Hernandez nonetheless signed off on plaintiff's time sheet, and plaintiff was paid for an entire work shift.  Defendant states that he signed off on plaintiff's time sheet because he felt sorry for him and believed that he was just having a bad day.  (Hernandez Decl. ¶ 12; Work Log (ECF No. 29-4 at 4).)

The next day, on January 3, 2011, plaintiff again reported to work at the Facility C satellite kitchen, where defendant Hernandez was again also assigned.  Defendant Hernandez allowed plaintiff to work because he believed in giving workers a second chance and felt that plaintiff could be an efficient worker with guidance and counseling.  (Hernandez Decl. ¶ 14.) From the beginning of the shift, plaintiff moved slowly and fell behind in his duties as a linebacker.  He refused to do what defendant Hernandez told him to do, and was generally not receptive to defendant Hernandez's instructions.  Defendant Hernandez put another worker in plaintiff's position when inmates started arriving for dinner.  Around 4:30 p.m., defendant Hernandez once again told plaintiff to leave and had the kitchen correctional officer escort plaintiff out of the area.  (Id. ¶ 15.)  Despite plaintiff working only half a shift on January 3, 2011, defendant Hernandez again signed off on plaintiff's time sheet as though plaintiff had worked a

full shift.  Defendant Hernandez did this because he felt sympathy for plaintiff.  (Id. ¶ 17; Work Log (ECF No. 29-4 at 4).)

On January 5, 2011, defendant Hernandez again worked in the Facility C satellite kitchen. Defendant did not want to deal with plaintiff and his disruptive behavior, so he informed the kitchen officer that plaintiff was not needed that day.  Defendant Hernandez had no contact with plaintiff, and plaintiff did not work on January 5, 2011.  (Hernandez Decl. ¶ 18; Work Log (ECF No. 29-4 at 4).)

On January 9, 2011, defendant Hernandez was again assigned to the Facility C satellite kitchen, and again informed the kitchen officer that plaintiff was not needed that day.  Defendant Hernandez had no contact with plaintiff, and plaintiff did not work on that day.  (Hernandez Decl. ¶ 19; Work Log (ECF No. 29-4 at 4).)

On January 5 and 9, defendant Hernandez indicated on plaintiff's time sheet that he was "not needed" (designated "S").  (Hernandez Decl. ¶¶ 18, 19; Work Log (ECF No. 29-4 at 4).)

On January 10, 2011, defendant Hernandez issued an Informational Chrono (Form CDC 128-B) stating that, when he (Hernandez) was assigned to the Facility C satellite kitchen, he would not work with plaintiff and plaintiff would not be allowed to report to work.[7]  Defendant Hernandez provided plaintiff with a copy of this chrono on the same day.  (Hernandez Decl. ¶ 21.)

---

[7] The Informational Chrono (Form CDC-128-B) completed by defendant Hernandez on January 10, 2011 provided in full:

> On 1/2/11, while performing my duties as a Correctional Supervising Cook in Facility 'C' Dining, Inmate Roberts [], who is assigned to position number [] in Facility 'C' Dining PM permanent shift as a Linebacker, became intolerable in his verbal attack of staff and other inmates that he works with.  Additionally, inmate Roberts was unreceptive to counseling and, even though he is an acceptable kitchen worker, his need to be constantly corrected prevents him from being able to effectively work under the authority of staff, and is demonstrative of the fact that he is not receptive to counseling.  This chrono is for informational purposes and to document the fact that when I work the Facility 'C' PM shift, inmate Roberts will be given 'S' Time due to the fact that he is unable to work under this staff member's instructions and orders.

(Esquivel Decl., Ex. B (ECF No. 29-4 at 6).)

1    Meanwhile, on January 8, 2011, plaintiff submitted an inmate grievance (Form CDC 602)

2    (Log No. MCSP-C-11-0069A) alleging in part that defendant Hernandez "tried engaging me into

3    sexual playful chatter . . . which I declined," and that defendant refused to let plaintiff work on

4    January 3 and 5, 2011, "[b]ecause I kindly asked him (as I did in the past), on 1/2/11 not to play

5    with me . . . ."  (Esquivel Decl., Ex. C (Pl.'s Form CDC 602) (ECF No. 29-4 at 9-14).)  Defendant

6    Hernandez states that he did not learn of plaintiff's inmate grievance until mid-to-late June 2011,

7    when he was interviewed in connection with plaintiff's complaint.  (Hernandez Decl. ¶ 26.)

8    Defendant Hernandez avers that, when he refused to allow plaintiff to work on January 9,

9    2011, and when he prepared the Informational Chrono on January 10, 2011, defendant was

10    unaware that  plaintiff had submitted a grievance against him on January 8, 2011.  Defendant

11    Hernandez maintains that he did not allow plaintiff to work in the kitchen with him any longer

12    because he did not want to deal with plaintiff's disruptive behavior and inability to accept his

13    instructions.  Nevertheless, defendant Hernandez states that he would have taken the same action

14    even if he'd known about plaintiff's filing of the inmate grievance.  (Hernandez Decl. ¶¶ 20-22,

15    24.)

16    Because of the seriousness of plaintiff's allegations against defendant Hernandez, his

17    inmate grievance was referred to the Office of Internal Affairs for investigation.  On November 9,

18    2011, defendant Hernandez received notice that the investigation was completed and that

19    plaintiff's allegations were "not sustained."  Defendant Hernandez was never disciplined,

20    reprimanded, or counseled for his alleged misconduct as asserted in plaintiff's grievance.

21    (Hernandez Decl. ¶¶ 27, 28; Esquivel Decl., Ex. D (OIA Memorandum, dated Nov. 9, 2011) ECF

22    No. 29-4 at 21.)  Defendant Hernandez avers that he never sexually harassed plaintiff or any other

23    inmate; that he never made any sexual comment or innuendo toward plaintiff or any other inmate;

24    and that he did not sexually touch plaintiff or have physical contact with him at any time.

25    (Hernandez Decl. ¶¶ 13, 16, 23.)

26    **II.  Plaintiff's Evidence and Arguments**

27    Plaintiff's opposition to the pending motion is supported by his verified complaint, sworn

28    deposition testimony, and exhibits attached to his opposition.  Plaintiff's relevant administrative

1    grievance is set forth in the exhibits submitted by both plaintiff and defendant.

2         Plaintiff asserts that defendant Hernandez had a reputation for engaging inmates in sexual

3    banter and games.  (Compl. (ECF No. 7) at 3; Roberts Dep. 46:19-22, 57:12-15, 58:20, 59:23-28,

4    60:5-9, 61:19-27, 69:14-23, 98:18-100:8.)  For example, plaintiff states that he witnessed

5    defendant "grope another inmate in his scrotum," and that this inmate (Edwards) "testified to

6    Lieutenant Perez during 602 2d Level of Review."  (Roberts Dep. 59:23-4, 93:3-95:26; Roberts

7    Decl. (Opp'n., Ex. B) ECF No. 37 at 13.)

8         At his deposition in this case, plaintiff testified that about a month before the incidents he

9    alleged took place in January 2011, defendant Hernandez had commented to plaintiff that

10   "Jamaicans have big heuvos."  (Roberts Dep. 58:24-59:23.) [8]  Thereafter, on January 2, 2011,

11   when plaintiff was preparing bread for the evening meal service, defendant Hernandez allegedly

12   walked up to plaintiff, placed his hand on plaintiff's shoulder, and said, "Hey, Roberts, are you

13   gay?  Jamaicans have big heuvos."  (Id. at 58:24-59:23, 66:27-67:7, 69:9-12, 78:16-79:1, 80:5-

14   82:7.)  Plaintiff testified that he responded, "Look, you need to stay away from me," and "I don't

15   play those games," and that defendant Hernandez walked away laughing.  (Id. at 67:6-68:4, 70:2-

16   4, 79:3-6, 79:16-20, 81:2-22.)  Plaintiff also testified that defendant Hernandez "rested" his hand

17   on plaintiff's shoulder and that, while the touch was not inherently sexual, plaintiff knew that

18   "you're not supposed to touch an inmate," and "the only thing that was flashing in my mind is

19   when he groped that inmate," and "I had to make a stand."  (Id. at 79:7-82:11.)  This was the only

20   time that defendant Hernandez touched him, according to plaintiff.  (Id. at 78:16-7.)

21        Plaintiff claims that later on January 2, 2011, after the "first run" meal service, defendant

22   Hernandez approached inmate Morales, pointed to a bald spot on Morales' head and, within

23   earshot of plaintiff, commented that Morales needed "oil" on his head, which Roberts understood

24   to mean semen.  (Roberts Dep. 68:8-23, 71:14-20, 75:6-16, 76:23-5.)  Plaintiff responded, "That's

25   crazy."  (Id. at 74:14-6.)  Thereafter, defendant Hernandez removed plaintiff from the serving line

26   between the first and second meal runs allegedly because plaintiff had been serving out too much

27
     _____

28   [8]  The record before the court on summary judgment supports an inference that plaintiff is of
     Caribbean ancestry.

1  food.  (Id. at 74:2-13, 77:13-6.)  Plaintiff responded by stating aloud, during the second meal run,

2  that, "In main line, this wouldn't be tolerated.  People would get hurt," and, "If this continues, I'm

3  going to make a write-up."  (Id. at 71:24-73:24, 77:5-9.)

4         Plaintiff testified that he was not permitted to work on January 3 or 5, 2011, but that

5  nonetheless "somebody" filled out his time sheet for those days.  Plaintiff stated that he worked

6  on January 4, 2011.  (Roberts Dep. 21:7-22:2, 83:21-84:5.)  Plaintiff testified that, on January 3

7  and 5, "[i]t was announced via the intercom, 'Roberts, do not report to work today.'"  (Id. at

8  84:24-6.)  Nevertheless, plaintiff said that he reported to work both days and was told by

9  defendant Hernandez not to come in, and that he would be having "S time" whenever he worked.

10  (Id. at 85:7-86:8.)  Plaintiff testified that his regular days off (RDO) were Fridays and Saturdays

11  (viz., January 7 and 8, 2011).  (Id. at 86:26-7.)  Plaintiff also testified that he didn't know what

12  happened on January 9, 2011, but that defendant Hernandez "could have not allowed me to work

13  that day and I did not document it."  (Id. at 84:6-10.)

14         Plaintiff submitted an inmate grievance on January 8, 2011 (Log No. MCSP-C-11-

15  0069A), which alleged in pertinent part:

16              On 1/2/2011, C.D.C. Hernandez tried engaging me into sexual
                playful chatter [alleged statements not identified], of which he's
17              done to others, to which I declined.  Hernandez touched inmate
                Morales (a co-worker), taking his hair-net from off his head and
18              commented, pointing to a bald area on Morales head, "You need oil
                there" (a sexual inference to semen), laughing out loud.  I also saw
19              C.S.C. Hernandez inappropriately touch/grab a former co-worker of
                mine (inmate) in his groin area from the back, as Hernandez was
20              walking towards the C-dining hall door to exit for the day. . . .
                Hernandez worked overtime hrs. in C-facilities dining hall on
21              1/3/11 and on 1/5/11, but refused to let me work.  Because I kindly
                asked him (AS I DID IN THE PAST), on 1/2/11 not to play with
22              me. . . .  Hernandez (C.S.C.) "repressive tactics" of not allowing me
                to work when he shows up for overtime has been noted, as well as
23              reported to his immediate supervisor.  Hernandez is widely known
                within this prison community for his unprofessional behavior and
24              despicable acts.  Hernandez has been involved in prior acts of
                familiarity within the past two-three months.
25

26  (Esquivel Decl., Ex. C (Pl.'s Form CDC 602) (ECF No. 29-4 at 11, 13).)  Plaintiff requested that

27  he receive no reprisals for submitting this inmate grievance.  (Id. at 11, 14.)

28

1   Plaintiff subsequently added to his inmate grievance the allegation that defendant

2   Hernandez had retaliated against him for using the inmate appeals process by filing "an untrue

3   128B Chrono." (Id. at 15.) Plaintiff stated that, on January 10, 2011, defendant Hernandez

4   "walked up to me (in the presence of my co-workers/other inmates) and threw an envelope

5   towards me, which hit me in the face and fell to the ground.  Inmate Adams picked it up (it was

6   said 128B Chrono)." (Id.; Roberts Dep. 27:7-20.)

7   Plaintiff testified at deposition that he submitted his inmate grievance by putting it in the

8   regular mail, and did not provide defendant Hernandez with a copy.  (Roberts Dep. 90:25-91:5,

9   17-9.)  Plaintiff also testified that defendant Hernandez knew about plaintiff's inmate grievance

10   when defendant submitted the 128B Chrono because plaintiff had warned him on January 2 that

11   he was going to write him up.  (Id. at 91:5-6, 92:17-21.)  Plaintiff speculated that "most likely

12   some of the informers working in the environment working where I was working [] could have

13   told him." (Id. at 91:26-8.)  However, plaintiff conceded that nobody had told him that they had

14   informed defendant Hernandez of plaintiff's inmate grievance.  (Id. at 92:1-21.)

15   Plaintiff has submitted the sworn declaration of inmate Dominic Palacio, wherein Palacio

16   states that, on the evening January 10, 2011, while working as a linebacker in the C-Facility

17   satellite kitchen, he sat on a milk crate after helping complete a serving run.  Mr. Palacio avers

18   that "Correctional Supervising Cook (CDC) J. Hernandez passed by me, then came back and sat

19   on my lap.  I was in shock and speechless, as J. Hernandez got up and walked away (laughing)."

20   (Opp'n., Ex. B (ECF No. 37 at 12); Pl.'s Form CDC 602 (ECF No. 29-4 at 15) ("[f]urthermore,

21   Hernandez sat on Palacio's lap (a co-worker/inmate) on 2/11/11"); see also Robert Dep. 96:9-

22   98:20).

23   Plaintiff's inmate grievance was initially handled as a staff complaint.  Correctional

24   Lieutenant R. Perez interviewed plaintiff on June 20, 2011.  At that time plaintiff reportedly

25   stated that "he does not want 'anything to happen' to the CSC [defendant Hernandez], he 'just

26   wants' cameras placed in the culinary so these 'types of things' can be stopped." (Pl.'s Form

27   CDC 602 (ECF No. 29-4 at 16).  Three other inmates were also interviewed:  Palacio, Adams

28   (plaintiff's direct supervisor) and Edwards.  (Id. at 18; see also Roberts Dep. 16:28, 63:2-4.)

1   William Knipp, the MCSP Warden, referred the matter to the Office of Internal Affairs.  (Pl.'s

2   Form CDC 602 (ECF No. 29-4 at 16).)  Due to this referral, plaintiff's inmate grievance was

3   "granted in part" at the Second Level of review on August 22, 2011.  (Id. at 10, 18.)  On

4   November 9, 2011, Warden Knipp sent a memorandum to defendant Hernandez, entitled

5   "Internal Affairs Investigation Closure," which informed defendant Hernandez that plaintiff's

6   allegations were not sustained by the investigation.  (Esquivel Decl., Ex. D (OIA Memorandum,

7   dated Nov. 9, 2011) ECF No. 29-4 at 21.)  On February 7, 2012, plaintiff's inmate grievance was

8   denied at the Third Level of review.  (Pl.'s Form CDC 602 (ECF No. 29-4 at 10, 18-9).)

9          Plaintiff filed his complaint in this action on October 4, 2011.[9]

10         At his deposition in this case, plaintiff testified that, in addition to defendant's alleged

11   retaliation by submitting the CDCD 128-B Chrono, plaintiff was retaliated against in the

12   following ways:

13              I received a lot of retaliatory excessive cell searches, properties
                were taken from me, I was thrown in Ad. Seg.  My Bible was taken
14              from me, property was taken from me.  Inmates were coerced to
                attack me . . . .  I was thrown in the hole under false pretension of
15              making threat toward staff . . . .

16   (Roberts Dep. 28:4-20.)   Asked if he "learn[ed] from any source  . . . that Hernandez was behind

17   any of those retaliatory acts," plaintiff responded that, the week after January 10, 2011, he heard

18   defendant Hernandez say to a third party, "I will get him."  Plaintiff added, "ever since he made

19   that comment, that's when my problems really started and I got  . . . thrown in the hole."  (Id. at

20   28:25-29:27.)  Plaintiff also testified that correctional officer Debbie Brown retaliated against him

21   on behalf of defendant Hernandez, stating "she's the one that got me into Ad. Seg."  (Id. at 34:17-

22   22.)  Plaintiff explained that officer Brown, who tried to "entice" plaintiff by rubbing against him,

23   was a friend of Sergeant Peterson who requested a mental health evaluation for plaintiff, which

24   was itself a retaliatory measure.  (Id. at 34:11-36:7, 37:3-8, 37:24-41:11.)  Plaintiff testified that

---

25   [9]  Defendant does not seek summary judgment on the ground that plaintiff failed to exhaust his
26   administrative remedies prior to commencing this action.  Failure to exhaust administrative
     remedies is an affirmative defense that must be raised and proved by the defendant.  Wyatt v.
27   Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003), overruled in part on other grounds, Albino v.
     Baca, 747 F.3d 1162 (9th Cir. 2014).  Because the issue of exhaustion has not been raised by
28   defendant, the court does not address it.

1   Peterson requested the mental health evaluation a week before the issuance of the order placing

2   plaintiff in administrative segregation for being a threat to the institution; and that these incidents

3   took place in February and March 2012, more than a year after defendant Hernandez's alleged

4   conduct.  (Id. at 39:14-40:24.)  Asked to clarify how these incidents were connected to defendant

5   Hernandez, plaintiff testified that "Everything is connected."  (Id. at 40:5-7.)  Moreover, while

6   plaintiff conceded that defendant Hernandez was not responsible for plaintiff's transfer to Valley

7   State Prison, he said that the retaliation was continuing, "because people are retaliating that know

8   about this and they're messing with my meals."  (Id. at 102:11-6, 102:26-103:1.)

9          Plaintiff testified that he submitted two mental health request forms to obtain counseling

10  for his mental anguish resulting from defendant Hernandez' alleged conduct, but his requests

11  were ignored.  (Roberts Dep. at 101:7-102:10.)  Plaintiff said that he initiated this action in an

12  effort to obtain damages and to have cameras placed in the dining hall, "for the safety of staff and

13  inmates alike to prevent such circumstances from transpiring."  (Id. at 100:18-25.)  Plaintiff

14  testified that he subsequently worked under defendant Hernandez's supervision but the defendant

15  made no further inappropriate comments to plaintiff other than saying to another inmate that

16  plaintiff didn't know how to cook.  (Id. at. 104:4-12, 105:7-106:2.)  Plaintiff stated that he had

17  approached defendant Hernandez a couple of times to say, in part, "I would like to really find a

18  way we can work together without the animosity," but that defendant only acted surprised and

19  didn't respond.  (Id. at 106:2-107:2.)

20         When asked at his deposition whether he had anything else to say about this action,

21  plaintiff testified that he regretted filing this action but hoped that it could be resolved, noting that

22  "I don't want to see anything happen to [Hernandez].  He has a family to feed, mouths to feed.  I

23  just – my focus was to have cameras there and Hernandez shape up and grow up."  (Roberts Dep.

24  107:15-108:6.)

25                                    **DISCUSSION**

26  **I.  <u>Sexual Harassment</u>**

27         Plaintiff alleges that defendant Hernandez sexually harassed him when he said to plaintiff,

28  "Jamaicans have big huevos."  Plaintiff alleges that defendant Hernandez made this statement on

14

1    two occasions, one month apart, the second time in tandem with defendant resting his hand on

2    plaintiff's shoulder and asking, "Are you gay?"  Plaintiff also alleges, in his complaint, that when

3    defendant asked plaintiff if he was gay, defendant Hernandez stated, "Jamaicans has small penis"

4    (sic).  (Compl., ECF No. 7 at 3.)[10]  Finally, plaintiff avers that when he rebuffed defendant

5    Hernandez, the defendant refused to allow plaintiff to work on two separate days in January 2011.

6    **A.  Legal Standards**

7    "The Eighth Amendment prohibits cruel and unusual punishment in penal institutions.

8    Whether a specific act constitutes cruel and unusual punishment is measured by 'the evolving

9    standards of decency that mark the progress of a maturing society.'"  Wood v. Beauclair, 692

10   F.3d 1041, 1045-46 (9th Cir. 2012) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)).

11   Sexual harassment that includes physical assault is a clear violation of the Eighth Amendment.

12   Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000).  However, "the Eighth Amendment's

13   protections do not necessarily extend to mere verbal sexual harassment."  Austin v. Terhune, 367

14   F.3d 1167, 1172 (9th Cir. 2004) (citations omitted).   Moreover, not "every malevolent touch by a

15   prison guard gives rise to a federal cause of action."  Hudson, 503 U.S. at 9. "In evaluating a

16   prisoner's claim, courts must consider whether 'the officials act [ed] with a sufficiently culpable

17   state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a

18   constitutional violation."  Hudson, 503 U.S. at 8 (citation and internal quotation marks omitted);

19   accord, Wood, 692 F.3d at 1046.

20   The court has previously recounted the standards applicable to an Eighth Amendment

21   verbal harassment claim in the prison context:

22   > In general, allegations of verbal harassment or abuse do not state a
     > claim cognizable under 42 U.S.C. § 1983.  Freeman v. Arpaio, 125

23   > F.3d 732, 738 (9th Cir. 1997) (abusive language directed at the
     > prisoner's religious and ethnic background was insufficient to state

24   > a constitutional deprivation . . . .  [T]here are circumstances in
     > which harassment may rise to the level of cruel and unusual

25   > punishment . . . .  Compare Hudson v. Palmer, 468 U.S. 517, 528-
     > 30 (1984) (malicious cell searches and "calculated harassment

26   > unrelated to prison needs" may implicate the Eighth Amendment),

27   _____

28   [10]  The court notes, however, that plaintiff did not repeat this allegation at his deposition in this
     action.

1
2
3
4
5
6
7
8
9
10
11

and <u>Watson v. Jones</u>, 980 F.2d 1165, 1165-66 (8th Cir. 1992) (an Eighth Amendment claim was stated where a female correctional officer sexually harassed two male inmates on an almost daily basis for two months by conducting pat-down searches that included deliberate examination of the inmates' genitalia and anus), <u>with Keenan v. Hall</u>, 83 F.3d 1083, 1092 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) ("disrespectful and assaultive comments" were not enough to implicate the Eighth Amendment where there was no indication that the prison guards' comments were unusually gross even for a prison setting or that the comments were calculated to and did cause psychological harm to the prisoner), <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir.1987) (directing vulgar language at prisoner does not state a constitutional violation), and <u>Minifield v. Butikofer</u>, 298 F.Supp.2d 900, 902-03 (N.D. Cal. 2004) (sexual comments and gestures by two officers did not implicate Eighth Amendment where neither officer exposed his genitals or touched the prisoner in a sexual manner).  Mere verbal abuse, without more, does not state an Eighth Amendment claim. <u>Schwenk v. Hartford</u>, 204 F.3d 1187, 1197-98 (9th Cir. 2000) (distinguishing mere verbal abuse from a prisoner's Eighth Amendment right to be free from sexual abuse).

12

<u>Leinweber v. Moore</u>, Case No. 2:06-cv-1068 MCE DAD P, 2006 WL 3489359, *3 (E.D. Cal.

13

2006) (allegation that defendant made two sexual comments about the plaintiff's mother, a former

14

correctional officer, failed to state a cognizable claim on initial screening of complaint pursuant

15

of  28 U.S.C. § 1915A).

16

**B. <u>Analysis</u>**

17

Viewing the evidence before the court on summary judgment in the light most favorable

18

to plaintiff, the court must initially determine whether defendant Hernandez's alleged statements

19

to plaintiff and brief touch were "objectively harmful enough to establish a constitutional

20

violation" and, if so, whether the record supports a reasonable inference that defendant Hernandez

21

acted with a "sufficiently culpable state of mind."  <u>Hudson</u>, 503 U.S. at 8 (citation and internal

22

quotation marks omitted).  "[T]he objective component of an Eighth Amendment claim is . . .

23

contextual."  <u>Id.</u>  <u>See</u> <u>also</u> <u>Watison v. Carter</u>, 668 F.3d 1108, 1112 (9th Cir. 2012) (the "inmate

24

must objectively show that he was deprived of something sufficiently serious") (citation and

25

internal quotation marks omitted); <u>Wood</u>, 692 F.3d at 1046 (alleged wrongdoing must be

26

"objectively harmful enough to establish a constitutional violation") (citation and internal

27

quotation marks omitted).  For the reasons set forth below, the court finds that plaintiff's evidence

28

of two or three inappropriate remarks and a single brief nonsexual touch on a given day, preceded

1    by a similar comment one month before, even if true, do not, objectively, establish conduct

2    sufficiently harmful to establish a constitutional violation.

3          As noted above, more egregious allegations than these have been found nonactionable.

4    See Leinweber, 2006 WL 3489359 at*3 (cited cases); see also Austin, 367 F.3d at 1169

5    (upholding summary judgment in favor of the defendant correctional officer on Eighth

6    Amendment claim that the defendant, "[w]hile still in the control booth . . . allegedly unzipped

7    his pants, exposed his penis to [plaintiff], who is black, and said 'come suck this white dick, boy,'

8    while shaking his exposed penis") (citing Blueford v. Prunty, 108 F.3d 251, 254-55 (9th

9    Cir.1997) (according qualified immunity to prison guard who allegedly engaged in "vulgar same-

10   sex trash talk" with inmates); and Somers v. Thurman, 109 F.3d 614, 624 (9th Cir.1997)

11   (according qualified immunity to female correctional officers who allegedly gawked and made

12   improper statements about plaintiff, a male inmate, when he showered).

13         Nor does evidence of defendant Hernandez's touching of plaintiff, even if true, elevate his

14   conduct to a cognizable Eighth Amendment claim.  In this regard, the Ninth Circuit has found

15   more blatant sexual touching to be nonactionable.  In Watison, 668 F.3d at 1112-14, the Ninth

16   Circuit affirmed the district court's dismissal of an Eighth Amendment sexual harassment claim

17   against a correctional officer who allegedly entered plaintiff's cell while he was on the toilet,

18   rubbed against plaintiff's thigh while smiling in a sexual manner, then left plaintiff's cell

19   laughing.  The Ninth Circuit concluded that the humiliation plaintiff allegedly suffered from this

20   incident did "not rise to the level of severe psychological pain required to state an Eighth

21   Amendment claim," id. at 1113, and that defendant's "alleged wrongdoing was not objectively

22   harmful enough to establish a constitutional violation," id. at 1114 (citations and internal

23   quotation marks omitted).[11]

24   _____

25   [11] Plaintiff's allegations of mental anguish are also belied by the evidence before the court on
     summary judgment.  Although plaintiff claims that his two requests for mental health counseling

26   were ignored and yet he has come forward with no evidence suggesting that he pursued those
     requests any further.  Finally, plaintiff testified at his deposition that his primary goals in

27   commencing this action were to obtain damages, to have cameras placed in the prison's kitchen
     areas, and to motivate defendant Hernandez to "shape up and grow up" without anything

28   happen[ing] to him."  (Roberts Dep. 108:3-6.)

1    For these reasons, evidence of defendant Hernandez's statements to and brief touching of

2    plaintiff cannot be said to be sufficient to establish a constitutional violation.  Evidence of

3    defendant's pattern and reputation of engaging in sexual chatter, "games" or inappropriate contact

4    with other inmates are irrelevant to plaintiff's Eighth Amendment claim, even if those other acts

5    were witnessed by plaintiff.  Liability under § 1983 requires a clear link between the defendant's

6    challenged conduct and the alleged constitutional deprivation experienced by plaintiff.  Johnson,

7    588 F.2d at 743 (liability under § 1983 requires that the defendant "does an affirmative act,

8    participates in another's affirmative acts or omits to perform an act which he is legally required to

9    do that causes the deprivation of which complaint is made").

10    Finally, the parties' factual disputes as to dates and reasons defendant Hernandez refused

11    to permit plaintiff to work two days in January 2011 are not material to plaintiff's Eighth

12    Amendment claim.  "The Constitution does not create a property or liberty interest in prison

13    employment."  Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986) (cited with approval in

14    Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004).  Plaintiff's assignment to, and temporary

15    removal from, his linebacker job in the Facility C satellite kitchen was a matter within the

16    discretion of prison officials.

17    In short, drawing all reasonable inferences from the evidence before the court on summary

18    judgment in plaintiff's favor, the court finds that defendant Hernandez's statements to plaintiff

19    and brief touch were not "objectively harmful enough to establish a constitutional violation"

20    under the Eighth Amendment.  Hudson, 503 U.S. at 8 (citation and internal quotation marks

21    omitted).  Under governing case law, no rational trier of fact could find otherwise.  See Addisu v.

22    Fred Meyer, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is

23    merely colorable . . . does not present a genuine issue of material fact" but rather there "must be

24    enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary

25    judgment motion."); Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) ("When the non-

26    moving party relies on its own affidavits to oppose summary judgment, it cannot rely on

27    conclusory allegations unsupported by factual data to create an issue of material fact.")  Thus, the

28    court need not determine whether the evidence on summary judgment supports a reasonable

inference that defendant Hernandez engaged in the challenged conduct with a "sufficiently culpable state of mind."  Id.  Accordingly, summary judgment will be granted in favor of defendant Hernandez with respect to plaintiff's Eighth Amendment claim.

**II.  Retaliation**

Plaintiff contends that defendant Hernandez retaliated against him for submitting an administrative inmate grievance challenging defendant's alleged sexual harassment of plaintiff. Plaintiff alleges that defendant Hernandez retaliated against him in the following ways:  (1) on January 10, 2011, by submitting an untrue Chrono 128-B stating that plaintiff was unable to perform his job in the prison kitchen on January 2, 2011, and that defendant Hernandez would not work with plaintiff in the future; (2) throwing a copy of that chrono in plaintiff's face on the same day; and (3) thereafter, by miscellaneous cell searches, confiscation of property, attacks by other inmates, a mental health evaluation resulting in plaintiff's placement in ad seg, and plaintiff's meals being "messed with."

**A.  Legal Standards**

To state a First Amendment retaliation claim, plaintiff must allege plausible facts that support the following five elements:  "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  Direct and tangible harm will support a First Amendment retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. Id. at 568 n.11; see also Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

The alleged retaliatory action need not, in itself, amount to a constitutional violation.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997) (upholding jury determination of retaliation based on filing of a false rules violation report); Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985) (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim).  Rather,

the interest asserted in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory conduct.

Filing administrative grievances and initiating litigation are constitutionally protected activities, and it is impermissible for prison officials to retaliate against prisoners for engaging in those activities. Rhodes, 408 F.3d at 567-68; see also Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) ("Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so.") (citing Brodheim, 584 F.3d at 1269); Austin, 367 F.3d at 1171 (prisoner's allegation that he was "punished for filing a grievance" against a correctional officer stated a First Amendment retaliation claim).

**B. Analysis**

Plaintiff's contention that defendant Hernandez submitted a false Chrono 128-B against him on January 10, 2011, in retaliation for plaintiff's submission of his administrative inmate grievance on January 8, 2009, states a prima facie claim under the First Amendment, as may plaintiff's contention that defendant threw the chrono in plaintiff's face.

The court initially notes that plaintiff's further claims of retaliation by defendant -- cell searches, confiscation of property, attacks by other inmates, a mental health evaluation leading to ad seg placement (including the alleged actions of correctional officers Brown and Peterson), and plaintiff's meals being "messed with" -- are far too vague and attenuated to reasonably support any inferred link between defendant's challenged conduct and the alleged retaliatory acts. See Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). Plaintiff's deposition testimony that he heard defendant Hernandez say to a third party, the week after January 10, 2011, that defendant would "get him" (Roberts Dep. 29:1-22), also lacks the requisite specificity and linkage. While "[t]he requisite causal connection can be established . . . by setting in motion a series of acts by others," Starr v. Baca, 652 F.3d 1202, 1218 (9th Cir. 2011), plaintiff has presented no evidence upon which the finder of fact could reasonably infer that defendant Hernandez set in motion any series of acts resulting in retaliatory conduct toward plaintiff after

1    January 10, 2011.  Accordingly, below, the court's analysis is limited to plaintiff's claims

2    concerning defendant Hernandez's allegedly retaliatory submission of the subject 128-B Chrono

3    on January 10, 2011 and the throwing of that chrono at plaintiff.

4    　　　　Defendant Hernandez contends that the evidence before the court on summary judgment d

5    demonstrates that he had no knowledge of plaintiff's filing of an inmate grievance against him

6    when he submitted the Chrono 128-B, or gave plaintiff a copy of it, and therefore that plaintiff

7    has simply presented no evidence of retaliatory motive on his part.  In fact, plaintiff's own

8    deposition testimony supports the defendant's position in this regard.  There, plaintiff testified

9    that he submitted his inmate grievance by putting it in the regular mail on January 8, 2011, and

10   did not provide defendant Hernandez with a copy.  (Roberts Dep. 90:25-91:5, 17-9.)  Plaintiff

11   merely speculated during his deposition that defendant Hernandez may have known about

12   plaintiff's inmate grievance when defendant Hernandez submitted the 128B Chrono on January

13   10, 2011, because plaintiff had warned defendant back on January 2 that he was going to "write

14   him up" (id. at 91:5-6, 92:17-21); and because "most likely some of the informers working in the

15   environment working where I was working [] could have told him" (id. at 91:26-8).  However,

16   plaintiff conceded at his deposition that no one told him they had informed defendant Hernandez

17   of plaintiff's filing of an inmate grievance prior to January 10, 2011.  (Id. at 92:1-21).

18   　　　　Review of the evidence before the court on summary judgment also supports defendant's

19   argument on this point.  Plaintiff's inmate grievance, signed and mailed by plaintiff on January 8,

20   2011, is marked received on January 12, 2011.  (Pl.'s Form CDC 602 (ECF No. 29-4 at 11).)

21   Simply put, plaintiff has presented no evidence on summary judgment that defendant Hernandez

22   knew about plaintiff's filing of an inmate grievance against him when he submitted the Chrono

23   128-B, and gave plaintiff a copy of it, on January 10, 2011.

24   　　　　Plaintiff's failure to come forward with any evidence of retaliatory motive on summary

25   judgment fatally undermines his prima facie claims.  Speculation, such as that relied upon by

26   plaintiff, will not suffice at this stage of the litigation.  Moreover, defendant Hernandez had a

27   legitimate correctional purpose in completing and submitting the informational chrono -- to

28   maintain efficient meal service at the Facility C satellite kitchen.  In addition, the impact of the

21

1  issuance of the chrono in question on plaintiff was di minimis.  The chrono was informational

2  only; it did not result in disciplinary action against plaintiff.  Rather, it merely prevented him

3  from working in the kitchen when defendant Hernandez was assigned to supervise the Facility C

4  satellite kitchen.  Even this restriction was short lived, based on plaintiff's own deposition

5  testimony that he subsequently worked under defendant Hernandez's supervision without

6  incident, other than defendant allegedly telling another inmate only that plaintiff didn't know how

7  to cook.  (Roberts Dep. 104:4-12, 105:7-106:2.)

8       The absence of evidence at summary judgment demonstrating retaliatory motive also

9  undermines plaintiff's claim based on defendant Hernandez allegedly throwing a copy of the

10 subject chrono in plaintiff's face.  Even if proven, such conduct fails to demonstrate "direct and

11 tangible harm" sufficient to sustain a retaliation claim.  As previously noted, an alleged

12 wrongdoing must be "objectively 'harmful enough' to establish a constitutional violation"

13 Hudson, 503 U.S. at 8.

14      For these reasons, the court finds that plaintiff has not come forward with sufficient

15 evidence to sustain a reasonable inference that defendant Hernandez retaliated against plaintiff for

16 exercising his right to submit an inmate.  Accordingly, summary judgment will be granted in

17 favor of defendant Hernandez with respect to plaintiff's First Amendment retaliation claim as

18 well.

19                                    **CONCLUSION**

20      For all of the reasons set forth above, the court finds no material issue of fact precluding

21 the grant of summary judgment.  Viewing the evidence submitted to the court in the light most

22 favorable to plaintiff, the court also finds that defendant Hernandez is entitled to summary

23 judgment in his favor with respect to both of plaintiff's claims.  Accordingly, IT IS HEREBY

24 ORDERD that:

25 /////

26 /////

27 /////

28 /////

1    1.  Defendant's motion for summary judgment (ECF No. 29) is granted in its entirety; and

2    2.  Judgment is entered for defendant Hernandez.

3    Dated:  September 30, 2014

4

5    _____

6    DAD:4                    DALE A. DROZD
     robe3308.msj             UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28